**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Case No. 06-CR-45-HDC |
| ) | |
| **CHRISTOPHER MICHAEL HELTON,** ) | |
| ) | |
| **Defendant.** ) | |

**OPINION AND ORDER**

This matter came before the Court for a hearing on Defendant Christopher Michael Helton's Motion to Suppress [Dkt. #15] on April 24, 2006. The Court received evidence and heard argument from the parties, whereupon the Court denied Helton's motion. This opinion and order memorializes the reasons for the Court's ruling.

BACKGROUND

The evidence adduced at the hearing established the following. The District Court of Tulsa County issued a felony arrest warrant for Lisa Spiegal.[1] On January 9, 2006, Duane Guthrie, a bail bond recovery agent, contacted Tulsa Police Officer Mark Kennedy and related that Guthrie had seen Ms. Spiegal exit a dark Ford truck and enter the residence at 23 North Louisville Avenue in Tulsa. Kennedy knew Guthrie, had relied on information Guthrie gave him in the past, and had never known Guthrie to give unreliable information. Kennedy, a member of the Northern Oklahoma Fugitive Task Force, had a file in his vehicle that contained Spiegal's picture, descriptive information, and a copy of her outstanding warrant. Kennedy contacted Deputy U.S. Marshals

---

[1] At the hearing, the parties referred to "Ms. Spiegal" interchangeably with "Ms. Batt." It is not clear to the Court which name is true, if either, and which, if not both, is an alias. Because the arrest warrant for this woman names her as Spiegal, the Court uses that name.

Holden and Kennebrew to advise them of the information and met Guthrie across the street from the residence. At the scene, Guthrie identified a dark Ford truck with tinted windows in the driveway of the residence as the same truck from which Spiegal exited. Kennedy surveilled the residence with binoculars. Kennedy saw a woman whom he believed to be Spiegal sitting on the passenger side of the dark Ford truck with tinted windows.

Defendant Helton exited the residence, entered the dark Ford truck, and drove away with the woman. Officer Kennedy followed the truck in an unmarked vehicle and around the 800 block of North Louisville turned on his "emergency equipment." Helton did not immediately stop, so Kennedy briefly turned on his vehicle's siren. Helton turned into the driveway of 802 North Louisville, exited the truck, and walked toward the residence. Kennedy exited his vehicle, observed that Helton appeared nervous, and asked Helton to raise his hands. Helton did not comply and continued walking toward the residence, his right hand in his pocket. Kennedy again asked Helton to raise his hands. Helton continued to walk away with his left hand raised. Using his right hand, Helton removed a .32 caliber handgun and a glass smoking pipe from his waistband and threw both into a bush. Helton then raised both hands and at Kennedy's command laid on the ground.

Deputy U.S. Marshals Holden and Kennebrew arrived at the scene. Deputy Holden patted down Helton and found a .32 caliber round of ammunition. Officer Kennedy removed the handgun and pipe from the bush. After arresting Helton, Kennedy determined that the truck's passenger was not Lisa Spiegal. Kennedy learned that Helton did not own the truck. A post-towing inventory of the truck revealed a set of scales, baggies, and components for the manufacture of methamphetamine.

DISCUSSION

Defendant Helton argues that Officer Kennedy's stop of the vehicle to determine the identity of the passenger and his seizure were unreasonable under the Fourth Amendment. Helton's argument is grounded in the law surrounding the ubiquitous *Terry* stop. The Government responds that 1) there was no seizure until after Helton dumped the firearm and pipe and 2) if there was a seizure, it was justified based on Kennedy's reasonable suspicion that Lisa Spiegal was the passenger in the truck.

The first issue is whether, and if so when, Helton was seized. A seizure requires either the use of some physical force to limit a person's movement or an acquiescence by a person to a police officer's assertion of authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). A bare assertion of authority without acquiescence by a person is not a seizure. *United States v. Harris*, 313 F.3d 1228, 1234 (10th Cir. 2002) (citing *Id.*). Whether a person is seized is sometimes couched in terms of whether a reasonable person in the circumstance would think he was free to leave. *Hodari D.*, 499 U.S. at 627-28 (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)).

It is clear that when Helton acquiesced (by stopping his vehicle) to Officer Kennedy's show of authority (by activating his vehicle's emergency lights), he, the car, and his passenger were seized within the meaning of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). It is also clear that when Helton exited the truck and walked away, he was no longer seized because there was no physical force limiting his movement, and he obviously felt free to refuse to submit to Officer Kennedy's show of authority. When Helton ignored Officer Kennedy and walked away, the initial seizure terminated. Helton was not seized again until after Kennedy witnessed Helton dumping contraband into the bush, an act that gave rise to probable cause and justified arrest.

However, even if Helton's initial seizure could be construed as continuing from the stop to the point that Helton raised both hands and laid on the ground, such seizure was reasonable under the Fourth Amendment. The totality of the circumstances dictate whether a stop is reasonable. *United States v. Maddox*, 388 F.3d 1356, 1366 (10th Cir. 2005). Considerations of officer safety mandate some leeway for an officer conducting a traffic stop. *See Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977) (holding that once a motor vehicle is lawfully stopped, officers may order the driver out of the vehicle); *see also Maryland v. Wilson*, 519 U.S. 408, 415 (1997) (extending the rule of *Mimms* to passengers of a vehicle); *United States v. Williams*, 419 F.3d 1029, 1031 (9th Cir. 2005) (holding that it is reasonable under the Fourth Amendment to order a passenger to get back into a lawfully stopped vehicle from which the passenger exits).

Duane Guthrie, a reliable and disinterested source, informed Officer Kennedy that he could find Lisa Spiegal, a person wanted on an outstanding felony warrant, at a particular location and that she had been the passenger in a particular vehicle. Officer Kennedy, equipped with binoculars, an arrest warrant, a photograph, and the identifying characteristics of Lisa Spiegal, believed in good faith that the passenger of the vehicle was Lisa Spiegal. These circumstances give rise to reasonable suspicion. Additionally, it was reasonable for Officer Kennedy to order Helton to return to the truck once Helton exited. Helton appeared nervous and his right hand was obscured from Officer Kennedy's view. Helton's actions created an objectively reasonable apprehension for an officer's safety during a traffic stop and therefore an order to return to the car was reasonable under the Fourth Amendment.

CONCLUSION

The initial seizure resulting from the traffic stop terminated when Helton left the vehicle. Officer Kennedy witnessed Helton in possession of contraband and had probable cause to arrest him. And, regardless of whether Helton was continually seized from the time he stopped the truck to the time he raised both hands and laid on the ground, such seizure was reasonable under the Fourth Amendment because Officer Kennedy had reasonable suspicion that the passenger was wanted on an outstanding felony warrant and was justified in trying to control the scene of his investigative stop.

**SIGNED** this 27th day of April, 2006.

HONORABLE H. DALE COOK
Senior United States District Judge